UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| THOMAS EDWARD CHAPMAN,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br><br>YELLOW CAB COOPERATIVE and ALI MOHAMED,<br><br>　　　　　　　　　　Defendants. | Case No. 15-CV-533-JPS<br><br><br>**ORDER** |

　　　　Plaintiff Thomas Edward Chapman ("Chapman"), proceeding *pro se*, filed a complaint against Defendants Ali Mohamed ("Mohamed") and Yellow Cab Cooperative, alleging various causes of action arising from his termination from employment as a taxicab driver. His first complaint failed to state any viable claims, and the Court granted him leave to amend. *Chapman v. Yellow Cab Cooperative*, Case No. 15-C-533, 2016 WL 756533, at *5–6 (E.D. Wis. Feb. 24, 2016). His next complaint came close to stating a claim for retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3), but Chapman failed to adequately allege that he was an employee of Defendants as defined in the FLSA and the relevant case law. *Chapman v. Yellow Cab Cooperative*, Case No. 15–CV–533–JPS, 2016 WL 6956624, at *4 (E.D. Wis. Nov. 28, 2016). Each of Chapman's other claims was patently meritless and was dismissed. *Id.* at *5–7. Additionally, the Court noted that one of the prior defendants, Parashu Giri ("Giri"), was not properly served

with process as required by Federal Rule of Civil Procedure 4. *Id.* at *7–8.[1] The Court gave Chapman "one final opportunity to amend his complaint and provide the detailed, specific allegations necessary to state a cognizable FLSA retaliation claim." *Id.* at *8–9.

Chapman filed his latest amended complaint on December 19, 2016. (Docket #80). It is a 59-page, stream-of-consciousness document containing factual allegations, legal argument, copies of pages from various texts, and what appear to be Chapman's objections to the Court's order dismissing his amended complaint.[2] Defendants moved to dismiss this complaint on February 7, 2017, arguing that it failed to properly allege that Chapman was their employee as required under the FLSA. (Docket #87).[3] Chapman filed a response on February 23, 2017. (Docket #92). Defendants did not timely file a reply.

---

[1] In his third amended complaint, Chapman states that he does not want to pursue any claims against Giri. *See* (Docket #80 at 2) (stating that Chapman suffered "no retaliation from Giri, only that Giri provided notice of his termination); *id.* at 11 (noting that Giri was simply Chapman's co-worker and a witness to the alleged retaliation, "nothing else"); *id.* at 15 (stating that Mohamed, not Giri, retaliated against him, and that Giri was named as a defendant only to ensure he would appear as Chapman's witness). As such, the Court no longer considers Giri to be a defendant in this case.

[2] Additionally, as he has done in the past, Chapman also filed a number of "supplements," also containing nigh unintelligible legal and factual assertions, after he filed the December 19 complaint. *See* (Docket #81, #82, #83, #86, #91, #93, #94, and #95). The Court warned in its last order that it would not consider these extraneous filings when ruling on a motion to dismiss, *Chapman*, 2016 WL 6956624, at *3, *9, and accordingly, it ignores them here.

[3] Defendants also challenge service of the third amended complaint, but because the Court finds that the complaint fails to state a claim, it need not decide whether there was any defect in service.

Based on its review of the parties' submissions and Chapman's third amended complaint, the Court is obliged to grant Defendants' motion to dismiss. Because this is the third time the Court has addressed the sufficiency of Chapman's complaint, it will assume familiarity with the relevant standards, as explained in its prior orders. *See Chapman*, 2016 WL 6956624, at *3.

The third amended complaint fails, as did its predecessors, to state any claims for relief. Initially, the Court notes that despite ordering the dismissal of all of Chapman's claims, save the FLSA retaliation claim, with prejudice, Chapman included all those allegations again in his third amended complaint. The Court will not repeat the lengthy analysis of why those other claims are without merit. *See id.* at *5–7. They stand dismissed with prejudice as previously ordered.

Moreover, Chapman failed in the one task the Court set him in its last order: to provide sufficient allegations that he was an employee of Defendants for purposes of his FLSA retaliation claim.[4] Stated briefly, Chapman alleges that he worked for Yellow Cab Cooperative as a cab

---

[4]It is not clear whether Chapman believes that Mohamed is his employer. In his complaint, Chapman alleges that while Mohamed is the president of Yellow Cab Cooperative, he does not make money from that position. (Docket #80 at 12). Instead, he also drives a cab for the company. *Id.* Chapman concedes that "there is no relationship between Chapman and Mr. Mohamed in order to paid [sic] by doing work for him or performing service [sic] for Mr. Mohamed." *Id.* Because the Court's analysis below is identical whether considering Mohamed or Yellow Cab Cooperative as putative employers, the Court will assume that Chapman wants to include both as his employers in this case. It is certainly clear that Chapman wants to sue Mohamed, even if Chapman fails to appreciate that he must establish that Mohamed was his employer for liability to attach. *See id.* at 15 ("Only Ali Mohamed retaliated against Chapman.").

driver.[5] (Docket #80 at 2). On January 30, 2013, he filed a wage complaint against the company with the Wisconsin Department of Workforce Development Equal Rights Division ("ERD"), alleging that he was not being paid the minimum wage. *Id.* at 2–3. Yellow Cab Cooperative was informed of the ERD complaint by letter on February 19, 2013. *Id.* at 3. On March 4, 2013, Chapman arrived at Giri's house to pick up the cab to start his shift. *Id.* at 2. (He shared a cab with Giri.) However, Giri told him that Mohamed had fired him from Yellow Cab Cooperative because of Chapman's wage complaint. *Id.*

As the Court has already found, these allegations appear to state a claim for retaliation in violation of the FLSA. *See Chapman*, 2016 WL 6956624, at *4. What was lacking in the last complaint, and what continues to be absent here, are allegations which adequately support the inference that Chapman was Defendants' employee such that they can be liable under the FLSA for retaliating against him. As the Court explained in its last order, the standards applicable to this inquiry are fairly straightforward:

> The FLSA defines the term "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA further defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," and defines "employ" as "to suffer or permit

---

[5]Several facts alleged in Chapman's prior complaints are absent here, such as the fact that Chapman worked for Yellow Cab Cooperative for seven years. *See Chapman*, 2016 WL 6956624, at *2. The Court has twice warned Chapman that an amended complaint entirely supersedes any prior complaint; the Court cannot borrow allegations from a prior complaint to supplement a later one it finds deficient. *See id.* at *8; *Chapman*, 2016 WL 756533 at *6. Having been warned, and warned again, about this issue, the Court is left with no choice but to simply ignore any prior factual allegations which are not contained in Chapman's third amended complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998).

to work." *Id.* § 203(d), (g). These statutory definitions "are broad and comprehensive in order to accomplish the remedial purposes of the Act." *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987). As a consequence, common law concepts of "employee" and "independent contractor" are generally inapplicable in FLSA cases; instead, courts must look to the "economic reality" of the relationship between the purported employer and employee. *Id.* Several factors, none of which is controlling, bear on this inquiry: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the alleged employer's business. *Id.* At bottom, "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947).

*Id.* at *4.

Chapman's factual allegations do not meet the standards outlined above, even when the Court construes his allegations liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). First, Chapman alleges that he paid a fixed rental rate to either Giri or the owner of the cab, Dennis Edwards ("Edwards"), or both, and kept his fares and tips for himself. (Docket #80 at 4–5); *id.* at 11 (noting that Giri "leases the cab by contract by paying so much money big money every year" to Edwards); *id.* at 16 (stating that Chapman paid the "leaser," Giri, a flat fee of between $300 and $500). But this allegation actually cuts *against* Chapman's theory. In his complaint, Chapman discusses at length (and even partially reproduces) *N.L.R.B. v. Friendly*, 512 F.3d 1090 (9th Cir. 2008), a decision from the Ninth Circuit analyzing

employer-employee relationships in the taxicab context. There, the Circuit court observed that when a driver pays a flat rental fee to the cab company, it raises a "strong inference" that the driver is an independent contractor, not an employee. *Id.* at 1097. This is because "the employer does not have an incentive to control the means and manner of the drivers' performance when the employer makes the same amount of money irrespective of the fares received by the drivers." *Id.* Thus, Chapman's allegation that he and Giri paid flat rental fees for their cab use is indicative that they were not employees of Yellow Cab Cooperative.

In *Friendly*, other factors indicative of non-employee status were that the cab company did not set work hours and did not withhold taxes or provide any benefits to its drivers. *Id.* In this vein, Chapman alleges that because he and Giri (and perhaps Edwards) sorted out amongst themselves the 24-hour work shift for the cab they shared, this constituted Defendants' exercise of control over Chapman's work hours. (Docket #80 at 16). Or, in Chapman's words, it suggested that Defendants exerted a "strong influence" over those hours. *Id.* Yet Chapman fails to connect the collaborative efforts between cab owner and drivers to Defendants. It does not appear, nor can it be inferred from Chapman's allegations, that Defendants themselves had anything to do with setting Chapman's hours of work. Quite the contrary—Chapman alleges that Yellow Cab Cooperative got a flat fee regardless. *See id.* Thus, as in *Friendly*, this fact undermines Chapman's claim that he was Defendants' employee.

Although the Ninth Circuit in *Friendly* ultimately concluded that there existed an employment relationship despite the flat-fee arrangement, this conclusion was premised on facts which Chapman has not alleged here. *Id.* at 1098. These include: (1) drivers were prohibited from operating their own

cab business on the side; (2) drivers could not sublease the cabs they leased, even to other drivers for the same company; (3) drivers had to abide by strict regulations over the manner in which they drove, such as how they should accelerate and brake and when to stop their cab for a potential fare; (4) drivers were required to display advertisements given to them by the company without compensation; (5) drivers underwent strict discipline for any violation of orders from the dispatcher; (6) drivers had to accept company-issued fee vouchers; (7) the cab company imposed a very specific dress code; and (8) the company had a policy manual which required drivers to undergo company training which exceeded the minimum regulatory requirements. *Id.* at 1098–1101.

Here, only a few of these factors are present and none to the extent as in *Friendly*. Chapman contends that Yellow Cab Cooperative exerts control over its drivers through its radio dispatch system and accompanying rules, the violation of which can subject a driver to discipline. (Docket #80 at 11). Discipline can include de-authorizing the driver's onboard computer so that he cannot accept new calls or fares, suspension, termination, or the imposition of a fine. *Id.* However, in contrast to *Friendly*, Chapman gives little specificity as to what infractions result in what punishments, and what sorts of orders dispatchers give. As best the Court can tell, the most common rule violation here is the driver's failure to timely answer a request from the dispatcher. *See id.* at 12.

Chapman also gestures at several other company rules. These include a dress code and a prohibition on cell phone use while driving with a customer inside the cab. *Id.* at 12, 17. There also appear to be rules against stealing another driver's customer and mandatory "radio fees," though whether these rules existed during the relevant period is not clear. *See id.* at

51–52. Such allegations might suffice in a different case to establish the requisite control. But recall that Chapman has by his own allegations raised a "strong inference" that he is not Defendants' employee. *Friendly*, 512 F.3d at 1097. His other allegations, unlike those in *Friendly*, are not enough to overcome this inference. For instance, Chapman does not describe how exacting is Yellow Cab Cooperative's dress code. Likewise, the rules Chapman has cursorily described pale in comparison to the demanding policies at issue in *Friendly*, such as regulating the rates of acceleration and braking. *Id.* at 1098. Finally, at least one of these factors—whether drivers could sublease their cabs—is in this case the opposite of the situation in *Friendly*, since Chapman admits that he and Giri subleased Edwards' cab. *Id.* at 1094–95; *see also N.L.R.B. v. O'Hare-Midway Limousine Serv., Inc.*, 924 F.2d 692, 695 (7th Cir. 1991) (limousine drivers were employees because the company had a strict dress code and other regulations and took a percentage of the drivers' fares).

This is the sum total of Chapman's allegations about his employee status under the FLSA. The balance of his 59-page complaint relates to his other, previously dismissed claims, which the Court did not permit him to

revive in his third amended complaint.[6] Despite his close reliance on *Friendly*, Chapman made no allegations about whether he was permitted to operate his own side business as a cab driver, whether Defendants controlled his routes and areas of operation, whether Defendants withheld taxes from his pay, whether Defendants provided benefits, and whether he was required to participate in training beyond whatever was required by governmental regulations, among other things. Instead, he has again left the Court with a combination of conclusory assertions, speculation, and allegations which actively undermine his position.

His complaint fares no better under the Seventh Circuit's own multi-factor analysis, which closely resembles *Friendly*. *See Lauritzen*, 835 F.2d at 1534. First, as explained above, Chapman's allegations do not establish that

---

[6]Toward the end of the complaint, Chapman reproduced what appears to be a 2013 decision from the ERD. (Docket #80 at 53–55). In it, an ERD official made an initial determination that there was "probable cause" to believe that Chapman suffered retaliation in violation of the Wisconsin Fair Employment Law, Wis. Stat. § 111.31 *et seq*. The officer discussed several allegations relating to the employer-employee relationship between Yellow Cab Cooperative and Chapman which Chapman has not presented to the Court in his third amended complaint. *See id.* at 54–55.

The document does not alter the Court's conclusions herein for several reasons. First, the Court cannot rely on this extraneous document to support Chapman's allegations. *Chapman*, 2016 WL 6956624, at *8. For whatever reason, Chapman, knowing about the allegations presented to the ERD, declined to include those same allegations in his third amended complaint. Chapman has now had three opportunities to include such allegations in his complaint and has not done so. The Court will not question that choice. Second, the ERD officer's decision is not controlling and is merely a preliminary determination that there exists "probable cause" to hold a hearing on Chapman's administrative complaint. It is not a final determination of any issue raised by Chapman's administrative complaint. *See Fair v. Basic Metals, Inc.*, No. 06-C-1072, 2007 WL 1847282, at *2–3 (E.D. Wis. June 26, 2007) (noting that final ERD determination on merits of wage complaint can have preclusive effect in subsequent litigation). Chapman does not indicate in the third amended complaint what became of his ERD grievance, and the Court will not assume that it terminated in his favor on this or any other issue.

Yellow Cab Cooperative exerted a meaningful degree of control as to the manner in which his work was performed. Second, it appears that the greater Chapman's skill as an effective and efficient cab driver, the greater his opportunity to generate profits, particularly since he kept his fares and paid Yellow Cab Cooperative only a fixed fee. Third, although Chapman did not actually own the cab he drove, neither was it provided directly by Yellow Cab Cooperative; instead, he leased it from Edwards. These considerations all weigh heavily against finding that Yellow Cab Cooperative employed Chapman for purposes of the FLSA.

Moreover, the factors which weigh in his favor are far weaker. Those include the fact that taxicab driving takes no special skill and that taxicab driving is, of course, integral to the business of a taxicab cooperative. *Id.*[7] When considered against the reality of Defendants' limited control over Chapman's work, these factors do little to alter the final analysis.

In sum, Chapman's allegations, viewed holistically—and generously, as the standard of review requires—do not raise the inference that Chapman was, as a matter of economic reality, dependent upon Yellow Cab Cooperative. *Bartels*, 332 U.S. at 130; *see also Iontchev v. AAA Cab Inc.*, No. CV–12–00256–PHX–ROS, 2015 WL 1345275, at *5–6 (D. Ariz. Mar. 18, 2015) (finding that "as a matter of economic reality [the cab company] exercise[d] little control" over its drivers because they paid a fixed rental rate, set their own hours, and did not have a detailed and comprehensive code of conduct, dress, and discipline). Consequently, Chapman has failed to state a claim under the FLSA. Given three opportunities to plead a viable claim, Chapman

---

[7]The third amended complaint gives no indication as to the length of the working relationship between Chapman and Defendants. *See supra* note 5. This factor is therefore neutral at best.

has each time failed. The Court must, therefore, dismiss Chapman's complaint with prejudice.

Accordingly,

**IT IS ORDERED** that Defendants Yellow Cab Cooperative and Ali Mohamed's motion to dismiss (Docket #87) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Page 11 of 11

Case 2:15-cv-00533-JPS   Filed 03/31/17   Page 11 of 11   Document 96